**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NIKEYA L. WILLIAMS,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**JOANNE B. BARNHART,** )<br>**COMMISSONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>Defendant. ) | 2:05cv1008<br>**Electronic Filing** |

**MEMORANDUM OPINION**

June 2, 2006

**I.   INTRODUCTION**

    Plaintiff, Nikeya Williams ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. The parties have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative proceedings.

**II.   PROCEDURAL HISTORY**

    The Plaintiff applied for SSI on May 27, 2003, alleging disability since February 1, 2002. R. 46, 63. The application was denied by notice dated September 5, 2003. R. 32. The Commissioner randomly selected this case to test modifications to the disability determination process, eliminating the reconsideration step of the administrative review process and escalating this case to the hearing level. R. 34. *See* 20 C.F.R. § 416.1406(b)(4) (2004).

    At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on October 27, 2004, and at which Plaintiff testified while represented by

counsel. R. 281-295. An impartial vocational expert, Francis Kinsley ("VE"), was also present and duly testified at the hearing. R. 295-298. After the admittance of post-hearing evidence, the ALJ rendered an unfavorable decision, finding that Plaintiff was not disabled. R. 20-21. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. R. 4-6. The instant action now seeks review of the Commissioner's final decision, and the matter is before this Court on cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### III.   STATEMENT OF THE CASE

#### A.

Plaintiff was born on January 5, 1977, making her twenty-eight (28) years old at the time of the ALJ's decision, and a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c); R. 46. Plaintiff attended school through the twelfth grade, received her GED, and attended vocational training for a brief period. R. 60, 210, 218, 289. While Plaintiff held up to ten (10) jobs in several capacities, between 1993 and 2002, she has no past relevant work experience. R. 12, 49-50, 290, 295.

#### B.

Plaintiff alleged a mental impairment in her disability application, and the Social Security Administration arranged for Linda Rockey, Psy.D., to perform a consultative psychological evaluation on August 1, 2003. R. 159-166. Plaintiff arrived on time for her appointment, made good eye contact, and participated readily in the evaluation. R. 159. She indicated to Dr. Rockey that in her past experiences she preferred to work at night because she did not want to be around others and was able to be alone. R. 160. Dr. Rockey indicated that Plaintiff reported mood swings, hypervigilance at home, and difficulty trusting others. R. 161-62. Some of this behavior may have been linked to the

Plaintiff's difficult past. *Id.*

While moderately anxious at times, Plaintiff was neatly groomed and her hygiene was good. R. 159, 162. Plaintiff's affect, while initially restricted, did improve throughout the session and she was pleasantly cooperative throughout the session. R. 161-162. Plaintiff was fully oriented in all spheres, and repeated six serial digits forward and five serial digits backward, which suggested only a mild limitation in concentration. R. 162. Her social and abstract reasoning abilities were intact; she was able to identify similarities and differences, and easily interpreted simple proverbs. R. 162-63. Plaintiff did report irritability and aggression at home, but there was no sign of any aggression or hostility during the evaluation. R. 163. Even though Plaintiff's judgment seemed affected by her depression and fear, she provided a fair insight into her difficulties. R. 163.

Plaintiff reported that her depression, fear, and mistrust of others prevented here from actively participating in common activities of daily living, but she was able to cook, clean, and do laundry. R. 163. While she stated that she had withdrawn socially from family and friends, she did remain close with her sister. R. 163-64. Dr. Rockey's diagnostic impression was major depressive disorder, severe, and assessed a GAF score of 50. R. 163. Dr. Rockey found only "slight" restrictions in Plaintiff's various work-related functions. R. 165. These categories included Plaintiff's ability to interact appropriately with the public, supervisors, and fellow co-workers. Also, Dr. Rockey considered Plaintiff to be only slightly restricted in her ability to respond appropriately to usual work pressures and changes in a routine work setting. R. 165. Plaintiff was found to be slightly restricted, or not at all, in her ability to understand, remember, and carry out instructions affected by the impairment. R. 165. In Dr. Rockey's opinion, the Plaintiff's prognosis for returning to work was fair once Plaintiff exerted better control of her depression and her energy level improved. R. 164. Dr. Rockey recommended Plaintiff begin psychotherapy to address her difficulties. R. 164.

In August 2003, Roger Glover, Ph.D., a state agency psychologist, assessed the Plaintiff's mental residual functional capacity. R. 182-184. Dr. Glover concluded, after reviewing the evidence, that Plaintiff possessed the mental capabilities to carry out routine work and follow a normal schedule. R. 184.

Michael Franzen, Ph.D., conducted a psychological functional capacity assessment, in November 2003, for the Pennsylvania Department of Public Welfare in order to identify barriers to Plaintiff's ability to work. R. 209-212. Dr. Franzen found Plaintiff to be oriented to person, place, day, date, time, month, and situation. R. 210. Plaintiff was initially hostile, but seemed to warm to Dr. Franzen as the session continued. R. 210. She did not exhibit any significant depressed mood or anxiety during the evaluation R. 210. Dr. Franzen's report indicated that the psychological test results demonstrated the possibility that Plaintiff may tend to highlight her difficulties and call attention to them. R. 210.

While Dr. Franzen did find that Plaintiff had difficulties with attention and concentration, adapting to new situations requiring precision, and other employment-related difficulties, he also opined that Plaintiff's limitations were not permanent, and would improve with psychological treatment. R. 211-212. In fact, even though Dr. Franzen assessed a GAF score of 50, he estimated Plaintiff's potential GAF score could be around 70. R. 211. IMX, a medical management company that arranged the psychological testing, opined that Plaintiff was only temporarily unable to work pending her becoming active in mental health treatment. R. 203. Only if Plaintiff did not improve with active mental health treatment, did IMX conclude that she would possibly be a candidate for SSI benefits. R. 203

From October 2003 to September 2004, Plaintiff received mental health treatment at Mercy Behavioral Health. R. 254-257. Jenine Kifer, LSW, conducted an initial mental health assessment in which the Plaintiff's mental status was adjudged to be entirely

4

normal. R. 276-77. Also, in October 2003, Harold Sternlicht, M.D., examined Plaintiff for a psychiatric evaluation. R. 266-67. Plaintiff reported a depressed and irritable mood, poor concentration, and fear of leaving her home. R. 266. Despite Plaintiff's sad mood and a tearful affect at times, she maintained a fair rapport and eye contact, a normal activity level, and normal speech rates and limits. *Id.* Plaintiff exhibited goal-orientated thoughts, denied suicidal or homicidal ideation, was alert and orientated, and appeared of average to low-average intelligence. *Id.* Dr. Sternlicht diagnosed major depression, single episode and a panic disorder. R. 267. He assessed a GAF score of 35, and recommended intensive therapy and medication. *Id.* Dr. Sternlicht also made note of the following, "[A]pparently, she cannot work because of her enlarged heart and also, taking care of the children and the difficulties with going outside." *Id.*

In February 2004, one of Plaintiff's counselors assessed a GAF score of 45, and that Plaintiff's overall progress in treatment was somewhat improved. R. 264. In June 2004, another of Plaintiff's counselors, Mary Stewart, noted that Plaintiff's condition had somewhat improved. R. 256.

C.

The Plaintiff's administrative hearing for SSI was held on October 27, 2004 before ALJ Kenneth R. Andrews. Plaintiff testified that her typical day involved waking up and getting her four children ready for school. R. 286. She testified that she does housework, cooking for her family, laundry, and sometimes goes grocery shopping. R. 287. Occasionally, the Plaintiff would be assisted in her household chores with help from various different family members. Plaintiff did not profess any real interests or activities. Even when describing mental conditions, such as mood swings or episodes of isolation or crying, Plaintiff preferred to focus on her thyroid issue. R. 292-93. Plaintiff admitted to sometimes hearing voices before shutting off any further inquiries. R. 294-95.

The ALJ asked the vocational expert, Francis Kinley, to assess a hypothetical

5

individual with the characteristics of the Plaintiff. This individual was limited to routine, repetitive, and simple tasks at a slower pace, which required only occasional contact with the public, co-workers, and supervisors. R. 297. The VE testified that an individual with Plaintiff's limitations could perform work as a stock or inventory clerk and press operator. R. 297. The VE testified that the stock clerk position existed in substantial numbers in the national economy at all exertional levels, including sedentary, light, and medium ranges. R. 296. Employment as a pressing machine operator also existed in substantial numbers in the national economy at the light and medium levels. *Id.*

The ALJ then posed another hypothetical to the VE in which the individual's limitations would be more severe with less exertional limits and only occasional contact with the public, co-workers, and supervisors. R. 297. The VE testified that occupations as a stock and inventory clerk and a press operator would still be appropriate. *Id.* In response to a third hypothetical, Ms. Kinley did testify that an individual unable to tolerate any contact with the public, co-workers, or supervisors would not find employment. R. 297-98. Plaintiff's attorney then posed a hypothetical for the VE in which the individual would possess marked difficulties in attention and concentration. R. 298. The VE testified that that particular factor, in and of itself, would not eliminate any of the occupations that had been discussed earlier. *Id.* When further pressed, the VE opined that perhaps a marked difficulty in attention and concentration could possibly be an issue in a potential occupation involving machinery. *Id.*

## IV.   STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir. 1994). This Court may not undertake a de novo review of the Commissioner's decision; the Court does not re-weigh the evidence of record. *Monsour*

*Medical Center v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999); *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995); *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions; he must make specific findings of fact. *Stewart v. Secretary of HEW,* 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence. *See Weir on Behalf of Weir v. Heckler,* 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration has promulgated regulation incorporating a sequential evaluation process for determining whether a claimant is under a disability. *See* 20 C.F.R. ß 404.1520; *Williams v. Sullivan,* 970 F.2d 1178, 1180 (3d Cir. 1992). In step one, the Commissioner must determine whether the claimant is currently engaging in

substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.

In step three, the Commissioner compare medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. *Adorno,* 40 F.3d at 46.

If the claimant is unable to resume his former occupation, or has no past relevant work experience, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). To meet this burden, the ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity ("RFC"). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. *See Plummer,* 186 F.3d at 428; 20 C.F.R. § 404.1523. Often, the ALJ will seek the assistance of a vocational expert at this fifth step. *See Podedworny v. Harris,*

745 F.2d 210, 218 (3d Cir. 1984).

V.  DISCUSSION

The issue before this Court is whether there is substantial evidence in the record to support the ALJ's decision that the Plaintiff was not disabled because her impairment did not prevent her from performing certain jobs that existed in significant numbers in the national economy.

Plaintiff contends that the decision reached by the ALJ is not supported by substantial evidence and that the findings of the ALJ are contrary to the psychiatric medical evidence and testimony. This Court does not agree for the reasons discussed below.

The ALJ decided this case at step five of the aforementioned sequential evaluation process, finding that despite her limitations, Plaintiff possessed the capacity to perform routine, repetitive, and simple tasks performed at a slower pace; which only required occasional contact with the general public, co-workers, and supervisors. R. 18. A finding at step five consists of asking whether Plaintiff can perform work, other than past relevant work, existing in the national economy. 20 C.F.R. § 416.920. Accordingly, because Plaintiff had no past relevant work experience, the ALJ shifted the burden to the Commissioner to show that there were other jobs existing in significant numbers in the national economy that Plaintiff can perform, consistent with her residual functional capacity, age, education, and work experience. *Id.* The VE testified that an individual with Plaintiff's limitations could perform work, such as stock and inventory clerk and machine press operator, which existed in substantial numbers in the national economy. R. 19, 297. The limitations posed before the VE where an accurate assessment of Plaintiff's limitations. Therefore, the ALJ correctly applied the evaluation process in finding that Plaintiff was not disabled. R. 20-21.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports with great weight, especially 'when their opinions reflect expert judgment based on *continuing* observation of the patient's condition over a *prolonged* period of time.'" (emphasizes added) *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000); *quoting Plummer,* 186 F.3d at 429 (3d Cir. 1999); *see also Allen v. Bowen,* 881 F.2d 37, 41 (3d Cir. 1989); *Podedworney,* 745 F.2d at 217-18 (3d Cir. 1984). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Winters v. Barnhart,* 153 Fed.Appx. 846, 849-50 (3d Cir. 2005); *quoting Plummer,* 186 F.3d at 429. Furthermore, another circuit, whose opinion is not controlling, has held that reports from consulting physicians who have examined the claimant and rendered assessments on conditions within their respective area of expertise are to be given appropriate evidentiary weight, which will vary based on the circumstance and other medical evidence presented. *Gordils v. Secretary of Health and Human Services,* 921 F.3d 327, 328 (1st Cir. 1990); *citing Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 223 (1st Cir. 1981).

Plaintiff maintains in her brief that the ALJ accorded only minimal weight to Plaintiff's treating source, Dr. Sternlicht and Mercy Behavioral Health. Plaintiff seems to argue that the ALJ's failure to mention Dr. Sternlicht by name is definitive proof of minimal scrutiny, and therefore, fatal to the ALJ's decision being based on substantial evidence. *See Winters,* 153 Fed. Appx. 846. However, *Winters*, cited by the Plaintiff in her brief, does not stand for such a simple proposition.

In *Winters,* the ALJ accorded only minimal weight to the claimant's treating physician, whose detailed report was the most recent, uncontradicted medical evidence concerning the claimant's psychiatric status. *Id.* at 849. The claimant's treating physician

had close, detailed examinations with claimant, evaluating him every eight weeks over the course of two years. *Id.* The court held that the ALJ's failure to accord the proper weight to the treating physician's reports demonstrated a lack of substantial evidence in the ALJ's decision. *Id.* The instant action is distinguishable from *Winters*.

Here, the ALJ's opinion discusses the treatment of Plaintiff at Mercy Behavior Health and her psychiatric evaluation with Dr. Sternlicht in October 2003. R. 13. The ALJ cites Dr. Sternlicht's diagnosis of major depression, single episode and panic disorder, and his recommendation that Plaintiff receive intensive therapy and treatment with medication. *Id.* Further, the ALJ provides the range of GAF scores assessed over a nine-month period, and that such scores ordinarily indicate a serious impairment which normally precludes an individual from maintaining a job. *Id.* The ALJ also noted from two separate visits, in February 2004 and June 2004, at Mercy Behavior Health that Plaintiff's condition was regarded as somewhat improved. *Id.*; R. 256, 264.

However, unlike *Winters,* the records from Mercy Behavioral provide only one evaluation report by Dr. Sternlicht, on October 24, 2003. R. 254-277. Moreover, Dr. Sternlicht's signature appears on chart documents from only two more visits, on September 12, 2003 and February 6, 2004, along with a counselor's signature. R. 264-66, 270. This is in sharp contrast with the thorough evaluation of the claimant in *Winters*. *Winters,* 153 Fed.Appx. at 848-849. Furthermore, unlike the claimant in *Winters,* Dr. Sternlicht's evaluation of the Plaintiff was not the last detailed report of medical evidence concerning the Plaintiff's psychiatric status. *See Id.* at 849. Dr. Franzen, a consulting physician, examined the Plaintiff on November 4, 2003, providing another detailed assessment after Dr. Sternlicht. R. 209-212. Dr. Franzen assessed a GAF score of 50, over fifteen (15) points higher than Dr. Sternlicht, a mere eleven (11) days later. R. 211. Dr. Franzen also estimated Plaintiff's potential maximum GAF score to be 70. *Id.* While Dr. Franzen's report was done in consultation for the Pennsylvania Department of Public

Welfare and is not binding on the ALJ, it was appropriately considered in rendering a decision. *See* 20 C.F.R. ß 416.904; *Gordils,* 921 F.3d at 328.

Dr. Sternlicht's single evaluation does not represent "a continuing observation of the patient's condition over a prolonged period of time," nor does Dr. Sternlicht's evaluation represent the fruits of a close and detailed course of treatment, with appropriate adjustments over a range of time. *Morales,* 225 F.3d at 317; *see also Winters,* 153 Fed.Appx. at 849 (pointing to the claimant's treating physicians regular contact with the claimant and careful detailing of medications and adjustment of therapy). Thus, while the ALJ's neglecting to mention Dr. Sternlicht by name may represent a professional slight, it does not stand for the proposition that the ALJ's decision lacked substantial evidence.

Plaintiff further argues that the ALJ ignored the GAF scores in reaching his decision. In his decision, however, the ALJ adequately explained his reasoning for not basing the adopted residual functional capacity on the GAF scores alone. As the ALJ noted, a GAF score is based upon a hypothetical continuum and, on its own, is not an exertional or non-exertional vocational factor for a profile of residual functional capacity. R. 12-13. In particular, Dr. Sternlicht's GAF score was assessed in October 2003, when Plaintiff had barely started seeking treatment from Mercy Behavioral Health, and before any therapy or medical regimen had been implemented. R. 266-267. Moreover, Dr. Sternlicht's GAF score was not consistent with his own evaluation of Plaintiff. His assessment found the Plaintiff to be alert and orientated, she maintained a fair rapport and eye contact, normal speech rate and rhythms, goal directed thoughts, and there was no presence of suicidal or homicidal ideations. R. 266. As the ALJ stated in his decision, the residual functional capacity profile was based on the record as a whole and the GAF scores were not viewed in isolation. R. 13.

Plaintiff also maintains that the ALJ was incorrect in finding Plaintiff's testimony

concerning her alleged symptoms as not entirely credible. R. 17. As fact-finder, the ALJ has an obligation to review all the evidence of record to decide whether or not the claimant's testimony is credible. *Williams,* 970 F.2d at 1186-87; *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). Significantly, the ALJ has great discretion when making credibility determinations, and the court should not lightly dismiss the ALJ's credibility findings based on a cold review of the record. *See Van Horn,* 717 F.2d at 873; *see also Herr v. Sullivan,* 912 F.2d 178, 182 (7th Cir. 1990) (holding that the court should affirm an ALJ's credibility determinations on appeal unless the appellant can demonstrate that the ALJ was "patently wrong.")

Clearly, Plaintiff's mental impairment would be expected to produce some nature of limitations, however, the ALJ correctly concluded that Plaintiff's testimony was not entirely credible to the extent of the limitations alleged. R. 17-18. Dr. Rockey, in an August 2003 examination, found Plaintiff pleasantly cooperative and fully orientated in all spheres. R. 18. Furthermore, the Plaintiff told Dr. Rockey and testified at her hearing that she engaged in a number of household activities, including cooking, cleaning, laundry, grocery shopping, and waking her children for school. R. 163, 285-88. Despite her claims of social withdrawal, she reported that she was close to her sister. R. 163-64. Plaintiff also indicated to Dr. Rockey that she arrived for her August 2003 appointment by means of an illegal taxi, and that she quit her last place of employment, as a nighttime janitor, because of her back, not due to a mental impairment. R. 159-60. Also, Plaintiff admitted to Dr. Franzen that she was experiencing difficulty in obtaining childcare because of a refusal to utilize a daycare facility, demonstrating a non-psychological barrier to gainful employment. R. 219.

While subjective complaints need not be fully confirmed by objective medical evidence in order to be afforded significant weight, subjective complaints that lack or are only minimally supported by objective medical evidence can provide a valid basis for

questioning a claimant's credibility. *See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981). Here, the evidence did not support the degree of disability claimed by Plaintiff; thus providing the ALJ a basis for questioning the limitations alleged by Plaintiff. *See Rosario v. Sullivan,* 819 F.Supp. 473 (W.D. Pa. 1992).

       Here, the ALJ scrutinized all the evidence of record before carefully assessing the Plaintiff's residual functional capacity. R. 12-18. The ALJ sufficiently accommodated the credible limitations produced by Plaintiff's mental impairments by limiting the VE's review to work for an individual who retained the capacity to perform routine, simple tasks performed at a slower pace, which required only occasional contact with the general public, co-workers, and supervisors. R. 18. These limitations for the Plaintiff were consistent with Dr. Rockey's Medical Source Statement, which found only "slight," if any, restrictions in Plaintiff's ability to perform various work-related functions. R. 165. Based on the limitations, the VE identified the occupations discussed earlier as positions that would accommodate these restrictions. R. 19, 297. It is true that Plaintiff's attorney posed an additional hypothetical, which the ALJ considered to be not applicable, would likely preclude the Plaintiff from substantial gainful employment. R. 19, 297. However, the ALJ correctly found that the medical evidence of record did not support such a marked limitation in attention and concentration. R. 19. Even with those marked restrictions, the VE testified that the Plaintiff would not be excluded from all jobs. R. 298.

       It is well-settled that a determination of disability is not founded upon the mere presence of impairments, but by the effect those impairments have on an individual's ability to perform substantial gainful employment. *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir. 1991). When making assessments of the impact impairments have on a claimant's ability to perform work related activities, determinations of credibility are committed to the sound discretion of the ALJ and must be affirmed where there is

substantial evidence to support them. *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999). Here the record contains substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled; therefore, the ALJ's decision must be affirmed.

### VI. CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence. Accordingly, pursuant to 42 U.S.C. § 1383(c)(3), the ALJ's decision that Plaintiff was not entitled to supplemental security income payments will be affirmed. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:  Lorraine D. Taylor
     Neighborhood Legal Services
     928 Penn Avenue
     Pittsburgh, PA 15222

     Jessica Smolar
     Assistant United States Attorney